**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CENTRALSQUARE
TECHNOLOGIES, LLC,

        Plaintiff,

        v.

THE NATIONAL BOARD
OF BOILER AND
PRESSURE VESSEL
INSPECTORS,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 25-cv-01294-RBD-DCI

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO AMEND COMPLAINT (DOC. 86)**

**INTRODUCTION**

Plaintiff CentralSqaure Technologies, LLC's ("Plaintiff" or "CST") Motion for Leave to Amend the Complaint—filed six months after the amendment deadline—should be denied. Plaintiff's belated request treats Federal Rule of Civil Procedure 16(b) as an afterthought. Unsurprisingly, Plaintiff does not argue that it was *unable* to file its Motion before the December 21, 2025 deadline—instead making clear that it did not even *start* any alleged diligence until near or after that date. Plaintiff cannot make the required showing of diligence as it admittedly waited, and waited, to until near or after the clock had expired to investigate information ***it always possessed***. Despite the National Board of Pressure and Boiler Pressure Vessel Inspectors' ("NBBI") repeated, early and often insistence that Plaintiff identify the claimed misappropriated trade secrets for purposes of defining this dispute, Plaintiff ducked these requests and deferred reviewing its own source code to identify 96 new alleged trade secrets until it was simply too late.

Plaintiff's massive expansion to its claimed cache of trade secrets aside, Plaintiff opted against amending its pleadings to assert viable claims of misappropriation in favor of expanding the scope of discovery by dropping the new 96 claimed secrets into a supplemental discovery response. Plaintiff's selected tactic demonstrates a lack of diligence and preference for fishing, but not good cause to amend, that would result in a massive shift in the landscape of this case if its Motion is granted.

The Court need not inquire further. Because the Motion is untimely and fails to demonstrate good cause, Plaintiff is not entitled to amend its complaint for a third

2

time. But even if good cause could somehow be shown, Plaintiff should not be permitted to amend its complaint under Rule 15(a) because it unduly delayed, NBBI would be unduly prejudiced, and the amendment would be futile.

## LEGAL STANDARD

When a motion to amend is filed after the scheduling order deadline, a two-step analysis applies: the movant "must first establish good cause exists for modifying the scheduling deadline under Rule 16(b)", and if that standard is satisfied, the movant must then demonstrate the "amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998); *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009).

"To show good cause under Rule 16(b), a party must establish that, despite its diligence, the deadline could not be met." *Wolf v. Celebrity Cruises, Inc.*, 304 F.R.D. 698, 700 (S.D. Fla. 2015); *Sosa*, 133 F.3d at 1418 ("This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'") (quoting F.R.C.P. 16 advisory comm.'s note). "If a party was not diligent, the good cause inquiry should end." *Id.* (citation modified).

If a party demonstrates good cause under Rule 16(b), "a district court need not … allow an amendment [under Rule 15(a)] (1) where there has been undue delay, bad faith, dilatory, motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where the amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

## ARGUMENT

The Court should deny Plaintiff's Motion for two reasons. *First*, good cause does not exist under Rule 16(b) to permit a third amendment, as Plaintiff did not and cannot establish it was unable to move before the December 21, 2025 deadline, *despite* its alleged diligence. The inquiry should end there. *Second*, even if good cause did exist, Plaintiff's Motion should be denied under Rule 15(a) because Plaintiff unduly delayed, NBBI would be unduly prejudiced, and the proposed amendment would be futile.

## I.   Good Cause Does Not Exist Under Rule 16(b)

Good Cause does not exist under Rule 16(b) because Plaintiff cannot establish that, despite allegedly exercising diligence, it could not meet the deadline to amend. Plaintiff always had exclusive possession of the information it used to identify the trade secrets it now seeks to inject into the complaint, and NBBI insisted even before the case was filed that Plaintiff needed to identify all trade secrets it alleges were misappropriated. ***It is without dispute that Plaintiff possessed this information when it amended the complaint twice before.***  Moreover, the Court's November 21, 2025 Order put Plaintiff on notice—a full month before the deadline to amend—that it needed to amend the complaint to identify all trade secrets it contends were misappropriated. Doc. 49 (the "November Order"). And the November 25, 2025 Scheduling Order made clear that the deadlines would be "strictly enforce[d]." Doc. 50 at 357.

A.   <u>Plaintiff  Failed to Use Information it Always Possessed to Identify its 96 New Alleged Trade Secrets Before the Deadline to Amend</u>

Courts in this Circuit hold that the lack of diligence precludes a finding of good

cause in cases where, before the deadline to amend passes, a plaintiff "has full knowledge of the information with which it seeks to amend its complaint" or fails "to seek the information it needs to determine whether an amendment is in order." *S. Grouts*, 575 F.3d at 1241 n.3. Here, Plaintiff seeks to amend the Second Amended Complaint ("SAC") to identify 96 new alleged trade secrets relating to the same JO Product that has been at the center of this litigation since day one. Plaintiff's counsel admitted Plaintiff possessed all the necessary information to identify these new alleged trade secrets from the outset. Doc. 84 at 28:25-29:12 (explaining Plaintiff solely relied on its own discovery to identify the new alleged trade secrets because "we have no discovery at all from them that we would be able to base our trade-secret claim on."). This admission is fatal to Plaintiff's claim of diligence. Plaintiff's "failure to seek the information it need[ed] to determine whether an amendment was in order" before the deadline to amend precludes a finding of good cause. *S. Grouts*, 575 F.3d at 1241 n.3.

In the June 4, 2026 Hearing, Plaintiff seemingly attempted to excuse its lack of diligence by characterizing the identification process as a "herculean effort" that required six weeks for plaintiff to go through "all of [its] source code" to come up with the additional 96 alleged trade secrets. *Id*. at 12:5-9, 27:23-28:24. But Plaintiff has no excuse as to why it waited until at least the November Order to even consider actually identifying its purported trade secrets, and apparently waited until near or even *after*

the amendment deadline to commence this supposedly "herculean effort."[1] Plaintiff's decision to defer commencing this effort until then demonstrates a lack of diligence, not good cause. *See, e.g.*, *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002) (no diligence because Plaintiff "waited until the deadline for amending his pleadings had expired to hire his expert witness"); *John Morrell & Co. v. Royal Caribbean Cruises Ltd.*, 243 F.R.D. 699, 701 (S.D. Fla. 2007) (no diligence in failure to "properly examine[] [] claims before the deadline for amending pleadings passed").

It should not be forgotten that Plaintiff amended the complaint twice before, and it admittedly had possession of the source code and information that it used to identify the new 96 trade secrets seven months into the lawsuit.  It possessed its source code when this court dismissed the original complaint for being a "shotgun" complaint and it possessed its source code when it moved to amend the complaint a second time in response to a Motion to Dismiss. The third amended complaint is based entirely on information Plaintiff concedes it exclusively possesses.

B.  <u>Plaintiff Ignored NBBI's Demands that Plaintiff Identify its Trade Secrets</u>

Plaintiff's lack of diligence is further demonstrated by the fact that NBBI repeatedly put Plaintiff on notice—well before the deadline to amend pleadings—that Plaintiff needed to identify its alleged trade secrets, if any, beyond what it ended up identifying in the SAC. Courts in this Circuit routinely hold good cause does not exist

---

[1] Plaintiff first identified the 96 new alleged trade secrets through a supplemental discovery response served on February 2, 2026 (Doc. 65 at 489 (citing Doc. 65-1)), after its code reviewer took "six weeks to go through the code and find those," (Doc. 84 at 27:23- 28:9), which means the "herculean efforts to identify those additional trade secrets", (*id.* at 12:5-9), may not have even begun until approximately December 22, 2025, the day *after* the deadline for motions to amend the pleadings, (Doc. 50).

where the moving party had reason to suspect, well before the deadline to amend the pleadings, that it would need to provide the information it seeks to add to an untimely amended complaint. *E.g.*, *Sanchez v, H & R Maint.*, *LC*, 294 F.R.D. 677, 680 (S.D. Fla. 2013) (determining "plaintiff lacked due diligence in discovering and utilizing the information that forms the basis for seeking leave" where answer and discovery request gave plaintiff "reason to suspect" information would need to be added to the action).

Well before December 21, 2025, the deadline to amend pleadings, NBBI asked Plaintiff to identify the at-issue trade secrets after receiving a vague and ill-defined cease and desist letter on May 9, 2025. Ex. 1. Between receiving this and the filing of the original complaint, NBBI asked CST to identify its alleged trade secrets no less than <u>seven</u> times. Ex. 2 at 2 (5/12/25 email stating "I do want to learn more about the precise trade secrets that are at issue. Your letter was expectedly silent on that topic. I am hopeful that we can work together to identify the technology that is at issue."); *id.* at 1 (5/28/25 email stating "[CST] has not identified a viable trade secret"); Ex. 3 at 3 (6/13/25 letter reiterating statement in 6/9/25 call that NBBI "cannot do more than [it has to investigate CST's claims] without identification of an alleged trade secret."); Ex. 4 at 2 (6/20/25 email stating "[t]o date, CST has not identified its alleged trade secret"); Ex. 4 at 6 (6/25/25 letter advising CST of its obligation to "identif[y] with particularity the specific trade secret(s) it believes NBBI has misappropriated.").

After NBBI's sixth request, CST finally attempted to identify its alleged trade secrets on June 25, 2025. Ex. 5 at 2. However, as NBBI advised on July 10, 2025, the "attempt to identify a CST trade secret [fell] far short of the mark." Ex. 6 at 3. CST

"generically describe[d] CST's trade secret by reference to widely used programming terminology," and this was "no disclosure at all, [as] the elements [Plaintiff] identif[ied] [were] inherently non-proprietary." *Id.* at 4. NBBI reminded Plaintiff it "is firmly upon your shoulders to articulate" what its trade secrets are. *Id.* at 8.

Despite these repeated requests, Plaintiff filed its complaint, stating its "trade secrets relate to [CST]'s Jurisdiction Online platform ('JO Trade Secrets')." Doc. 1 ¶ 3. Between the Court's *sua sponte* dismissal of this complaint (Doc. 11) and Plaintiff's filing of an amended complaint (Doc. 14), NBBI advised Plaintiff that "broadly def[ining] its trade secrets as 'relating to [CST's] Jurisdiction Online platform ('JO Trade Secrets')'…. is improper." Ex. 7 (7/24/25 Letter) at 3. Nonetheless, Plaintiff plowed forward and included the same broad definition in its first and second amended complaints[2]. Doc. 14 ¶ 3; Doc. 30 ¶ 3.

Counsel's comments foreshadowed the Court's November Order setting the scope of this case. Plaintiff cannot credibly argue it "acted with diligence … in pursuing discovery related to its claims" (Doc. 86 at 859) when it did not even start to review its own source code to identify its trade secrets until at least after the Court's November Order, despite NBBI explicitly and repeatedly asking Plaintiff to identify its trade secrets so that the scope of discovery could be set.  Plaintiff's failure to act on NBBI's demands, conduct a source code review, and identify its trade secrets before the deadline for amending, demonstrates a lack of diligence that precludes good cause.

---

[2] Plaintiff's Proposed Third Amended Complaint seeks to amend this allegation to reference "source code, unreleased business plans, and computer architecture." Doc. 86-1 at 875.

*Sanchez*, 294 F.R.D. at 680 (no diligence where defendant gave plaintiff "reason to suspect" it would need to amend).

    C. <u>Plaintiff Failed to Exercise Diligence Following the November Order</u>

Even if Plaintiff could (it cannot) argue that it had no reason to suspect that it needed to identify each of its allegedly misappropriated trade secrets in response to a Motion to Compel, the Court's November Order put Plaintiff on notice well before the deadline to amend pleadings. In November 2025, in response to NBBI's request for a pretrial management conference to discuss "tailor[ing]" discovery and dueling motions to compel (Doc. 49 at 348-49), the Court ruled that the scope of discovery on Plaintiff's misappropriation of trade secrets claims is limited to the two trade secrets identified in the operative complaint. *Id*. at 354 ("Relevant discovery under Rule 26(b)(1) concerning the trade secret claims—as those claims currently stand—will involve the two trade secrets identified in the Complaint: the 'unreleased update' and the 'confidence score.'"); *id*. at 353 ("Rule 26(b)(1) requires the Court to be able to identify the trade secrets that Plaintiff—*in the Complaint*—alleges that Defendant misappropriated.") (emphasis added). Thus, Plaintiff had notice that it would need to amend its complaint if it wanted to pursue other trade secrets not yet identified.

Despite this notice, Plaintiff failed to act diligently. Plaintiff had until December 21, 2025—approximately one month after the Court put it on notice—"to decide whether to seek leave to amend[.]" Doc. 80 at 779 (citing Doc. 50). "However, Plaintiff failed to seek leave to amend its pleading, failed to object to the [November] Order, failed to seek clarification of the Order (though none is needed), and failed to seek

reconsideration of the Order ...." *Id.* And it apparently waited until near or after the amendment deadline to begin reviewing its source code to identify its alleged trade secrets.[3] *Cf. Lord*, 223 F. Supp. 2d at 1277 ("the court cannot find ... diligence on the part of Plaintiff" where he "waited until the deadline for amending his pleadings had expired to hire his expert witness, who has now provided him with the factual basis for his proposed amendment.").

Then, on February 2, 2026, Plaintiff "made a supplemental response to a prior discovery request [that] disclosed the [same] 96 new alleged trade secrets" (Doc. 86 at 866) that it is now seeking leave to identify via amendment. *Compare* Doc. 65-1 at 498-506 *with* Doc. 88-1 at 888-897. Plaintiff did not attempt to disclose its 96 new alleged trade secrets with specificity until it made an Appendix available to NBBI in April 2026. Doc. 65 at 490 (referencing Ex. B served on April 7, 2026); *compare* 65-1 at 496 *with* 65-2 at 519 ("The asserted JO Trade Secrets related to source code are exemplified in Appendix A"). Yet Plaintiff did not even seek leave to amend for several more months. *Cf. S. Grouts*, 575 F.3d at 1242 (no diligence because Plaintiff "waited ... to file a motion to amend ... with information that it had known over a month before").

"[F]ive months after the [November] Order—[Plaintiff] sought to compel discovery based upon those 96 newly disclosed alleged trade secrets." Doc. 80 at 779. In response, NBBI pointed out Plaintiff had "not amended its complaint" to identify these trade secrets. Doc. 66 at 544. Plaintiff again, however, decided to wait another

---

[3] *Supra*, footnote 1.

month to file this Motion, until after the Court denied its second motion to compel. *Cf. U.S. ex rel. Olhausen v. Arriva Med., LLC*, 511 F. Supp. 3d 1278, 1282 (S.D. Fla. 2021) (no good cause where plaintiff waited for the court to resolve a pending motion before attempting to address deficiencies defendant identified in related briefing).

Plaintiff's foregoing actions or inactions demonstrate repeated failures to exercise diligence, each of which independently confirms that good cause does not exist. *See also* Doc. 87 at 915-16 ("[A]t the present moment no good cause [exists] to extend the amendment deadline, which passed a full six months ago.")

D. Plaintiff's Lack of Diligence is Inexcusable

Plaintiff's primary argument appears to be that the Court should find good cause exist because Plaintiff filed this Motion (six months *after* the deadline) "less than two weeks after the June 5 Order" (Doc. 86 at 860-61), when it claims it first learned that "all 98 trade [needed] to be identified in the complaint. *See generally* Doc. 86 at 860-61; 864. This argument fails for at least three reasons. *First*, Plaintiff focuses on what it did *after* the December 21, 2025, deadline expired, instead of the information available to it *before* the deadline. In doing so, Plaintiff failed to "establish that, despite its diligence, the deadline could not have been met." *Wolf*, 304 F.R.D. at 699.

*Second*, the argument suggests that Plaintiff believes it is the Court's obligation to inform Plaintiff how to investigate and litigate its case. But that is not accurate. *See, e.g.*, F.R.C.P. 11(b) (requiring attorney to certify that representations to court were "formed after inquiry reasonable under the circumstances"); *Oravec v. Sunny Isles*

*Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir.2008) (explaining that a plaintiff did not establish good cause by stating that it did not know about the jurisdictional defects of its claims until notified of those defects by the district court after the deadline for amending pleadings); Doc. 84 at 32:23-33:10 (Judge Irick explaining that it was not the Court's role to tell plaintiff at the last hearing that it could amend its complaint or take other actions); *see also, e.g.*, *High Point Design LLC v. Buyer's Direct, Inc.*, 621 Fed. Appx. 632, 644 (Fed. Cir. 2015) ("We first disagree with [the moving party's proposition that [the non-moving party] was responsible for notifying it, prior to the deadline, that the trade dress claim was deficiently pled.").

*Finally*, Plaintiff's argument fails because it made a strategic decision to identify its additional trade secrets via a discovery response, instead of an amended complaint. "The good cause standard is not designed to remedy the effect of Plaintiff's strategic decision." *Wolf*, 304 F.R.D. at 700. In November 2025, the Court—at minimum—put Plaintiff on notice that it may need to amend its complaint if it sought to include additional trade secrets.[4] *See* Doc. 49 at 354; Doc. 69 at 59:14-60:1 ("whether and how you can supplement or *amend* your trade secrets at issue in this case is for another day.") (emphasis added). By this point, Plaintiff should have considered it may need to amend to identify any additional trade secrets allegedly misappropriated.

---

[4] Defendant's argument that the November Order did not put it on notice "ignores that NBBI requested the PMC to discuss 'tailor[ing]' discovery to the trade secrets at issue in this case, that Plaintiff moved to compel broad discovery so it could figure out which of its trade secrets were stolen, and the Court had to determine the scope of relevant discovery concerning the trade secret claims." Doc. 91 at 932-933 (citation modified).

Plaintiff chose not to account for that possibility, believing supplementing its discovery response with 96 new alleged trade secrets was sufficient.[5] "But that errant belief is not what 'good cause' means. Nor does it support a showing of diligence when all the essential facts in the proposed amendment were [available] to Plaintiff[, as they were here,] prior to the expiration of the amendment cutoff in the scheduling order." *Wolf*, 304 F.R.D. at 700; *see also, e.g.*, *Sosa*, 133 F.3d 1418 n. 2 (the "excusable neglect" standard does not apply in Rule 16 context); *Olhausen*, 511 F. Supp. 3d at 1282 ("The Court is not persuaded by [plaintiff's] after-the-fact attempt to recast [its] tactic [of sitting back and waiting to see if the Court would let his pleading stand] as a defensible strategy for having the Court provide a party with a roadmap.").

It is clear that with appropriate diligence, Plaintiff could have sought to amend, with the trade secret identification it now proposes, well within the deadline set forth in the case management order. Plaintiff failed to do so. This ends the inquiry.

## II. Plaintiff's Motion for Leave to Amend Should Not be Granted Under Rule 15

Plaintiff's principal argument that its Motion should be granted focuses on Fed. R. Civ. P. 15(a)(2). Doc. 86 at 861-869. This argument misses the mark because Rule 15 does not apply here until Rule 16 is satisfied and, even if it did, Plaintiff unduly delayed and the proposed amendment would unduly prejudice NBBI and be futile.

---

[5]The supplement simply identified additional trade secrets without also pointing to any evidence that these newly identified trade secrets were allegedly misappropriated. Doc. 65-1 at 498-506.

13

A. <u>Plaintiff's Failure to Show Good Cause Precludes Consideration of Rule 15</u>

Rule 15(a) is inapplicable where, as here, Plaintiff fails to first demonstrate good cause under Rule 16(b). Plaintiff treats Rule 16(b)'s "good cause" requirement as an afterthought, claiming that "[e]ven if good cause [does] not exist, the Court may still grant leave to amend the complaint." Doc. 86 at 861 n. 4. But binding precedent clearly holds that a plaintiff that files a motion to amend after the scheduling order, "must first demonstrate good cause under Rule 16(b) before [the court] will consider whether amendment is proper under Rule 15(a)." *Sosa*, 133 F.3d at 1419. Here, Plaintiff filed its Motion a full six months after the deadline and failed to demonstrate good cause under Rule 16(b). Accordingly, the Court need not consider Rule 15(a).

B. <u>Plaintiff Unduly Delayed</u>

Even if the Court determines "good cause" exists, the Motion should be denied because Plaintiff unduly delayed in prosecuting this case. Plaintiff deferred reviewing its own source code to identify the new 96 alleged trade secrets until at least late November or December 2025 (approx. six months after filing the complaint). *Supra*, n. 1. Once this review was complete and it identified these new alleged trade secrets, Plaintiff waited an additional 4.5 months to move for leave to amend, even though Defendant pointed out to Plaintiff at least one month earlier that it failed to properly amend (Doc. 66 at 544). This "[u]ndue delay … bars the Plaintiff's Motion." *Affordable Aerial Photography, Inc. v. Witkowski*, No. 24-80423-CIV, 2025 WL 4092646, at *4 (S.D. Fla. Dec. 10, 2025); *see also Lord*, 223 F. Supp. 2d at 1275-76 (similar).

Plaintiff claims "the passage of time here is not indicative of undue delay …, but rather results from [Plaintiff's] reasonable understanding" of the November Order. Doc. 86 at 864. But, as the Court already stated, "[t]here is simply no basis for Plaintiff's contentions concerning its understanding of the ordered scope of discovery in this case …." Doc. 80 at 779.

C. <u>The Amendment Would Unduly Prejudice NBBI</u>

Undue prejudice also bars Plaintiff's Motion. Allowing the amendment, nearly one year after this case was filed, "would significantly disrupt the calendar," as the Court already acknowledged. Doc. 87 at 916. The current case schedule cannot accommodate all of the tasks necessary to try 96 new alleged trade secrets this late in the case. NBBI would have to re-review thousands of documents that were previously irrelevant to the two at-issue trade secrets, serve additional discovery requests targeted at these 96 new alleged trade secrets, and redirect its expert witness to analyze and opine on each of these additional trade secrets. Even additional third party discovery may be needed (if, for example, Plaintiff disclosed any one of 96 new additional trade secrets to a third party or a third party developed one of the alleged trade secrets). This is a million dollar expansion in the cost of defense.

Allowing Plaintiff to add 96 new alleged trade secrets this late in the case would immensely prejudice NBBI. *E.g.*, *Aerosonic LLC v. Joby Aero, Inc.*, No. 8:25-cv-665, 2026 WL 1361614, at *4 (M.D. Fla. May 15, 2026) ("Permitting additional trade secret at this late stage of discovery would greatly prejudice [defendant's] ability to prepare a defense."); *Athena Feminine Techs. Inc. v. Wilkes*, No. C 10-4868, 2013 WL 450147, at

15

*3 (N.D. Cal. Feb. 6, 2013) (denying leave because "permitting amendment at this late stage of litigation would be unduly prejudicial to [d]efendants" because "discovery will close shortly" in three months and "there [was] no reason that [p]laintiff could not have included these allegations in its prior pleadings."). This undue prejudice heavily weighs against granting Plaintiff leave, especially here, where (as explained above) Plaintiff has always had the information it needed to identify the 96 new alleged trade secrets that it now seeks to add to the case in the late stage of discovery.

Plaintiff asserts NBBI will not be prejudiced because it "has been on notice of all 98 of [Plaintiff's] trade secrets at least since February 2, 2026, when [Plaintiff] first supplemented its response to Interrogatory No. 1[.]" Doc. 86 at 866. This argument misses the mark. NBBI responded to Plaintiff's supplemental response by maintaining it was improper and "proceed[ing] in discovery" as nothing changed, as the November Order clearly limited discovery on Plaintiff's trade secret claims to the two trade secrets identified in the complaint. Doc. 84 at 22:13- 23:3; Doc. 66 at 543-44. Ultimately, the Court agreed with NBBI and ruled Plaintiff "may not circumvent" its November Order by "making supplemental discovery disclosures." Doc. 80 at 781. Thus, NBBI rightly decided against adjusting its discovery strategy to account for Plaintiff's improper supplemental disclosure. Plaintiff cannot now argue that NBBI will not suffer prejudice by its proposed amendment because NBBI was on "notice" of, and could have conducted discovery related to, 96 new alleged trade secrets that are not at issue in this case and were improperly disclosed in February.

16

D. <u>The Amendment Would Be Futile</u>

Finally, the Court should disallow the proposed amendments on grounds of futility. Whether an amendment is "futile" is measured by the same standards that govern a motion to dismiss. *Lifestyles CFL LLC v. Adams*, No. 6:22-CV-1934-ACC-DCI, 2023 WL 11724670, at *2 (M.D. Fla. May 26, 2023). "Conclusory allegations and unwarranted deductions of fact are not accepted as true." *Eidson v. Arenas*, 837 F. Supp. 1158, 1160 (M.D. Fla. 1993).

Here, Plaintiff's proposed amendment is futile.  It identifies 96 new alleged trade secrets but does not link those trade secrets to a claim of misappropriation. Unlike the two at-issue alleged trade secrets identified by the Court in the November Order, Plaintiff does not point to a screenshot, or a JRS feature, that links any of the 96 new alleged trade secrets to NBBI's JRS Product. Plaintiff's proposed amendment is too vague and conclusory to support a plausible inference that any of the 96 new alleged trade secrets were actually misappropriated. *See, e.g.*, *Phazr, Inc. v. Ramakrishna*, No. 3:19-CV-01188-X, 2019 WL 5578578, at *4 (N.D. Tex. Oct. 28, 2019) (granting motion to dismiss where allegations of misappropriation rested on defendant's mere employment of plaintiff's former employees);  *Rezult Grp., Inc. v. Turkheimer*, No. 3:22-CV-00567, 2023 WL 1975239, at *8 (M.D. Tenn. Feb. 13, 2023) (similar); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 986-897, 989 (S.D. Cal. 2012) (similar). As such, Plaintiff's proposed amendment is futile and its Motion should be denied.

## II.    CONCLUSION

For the foregoing reasons, NBBI respectfully requests that the Court find that Plaintiff failed to demonstrate good cause under Rule 16(b) and deny Plaintiff's untimely Motion for Leave to Amend Complaint. Alternatively, Defendant respectfully requests the Court deny the Motion under Rule 15(a)(2) because Plaintiff unduly delayed, allowing the amendment would unduly prejudice NBBI, and the proposed amendment would be futile.

Dated: July 1, 2026

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

By: /s/ *Stephen J. Segall*

Gregory S. Weiss (Lead Counsel)
gweiss@taftlaw.com
525 Okeechobee Boulevard, Ste 900
West Palm Beach, FL 33401
Phone: (561)-655-2250
Fax: (561)-655-5537

Aaron P. Bradford (*pro hac vice*)
abradford@taftlaw.com
Stephen Segall (*pro hac vice*)
ssegall@taftlaw.com
Briana D. Long (*pro hac vice*)
blong@taftlaw.com
675 Fifteenth St, Ste 2300
Denver, CO 80202
Phone: (303) 297-2900
Fax: (303) 298-0940

*Attorneys for Defendant The National Board of Boiler and Pressure Vessel Inspectors, Inc.*

18

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*/s/ Stephen J. Segall*
Stephen J. Segall